851 P.2d 843

**STATE of Arizona, Appellee,**

v.

**David E. BEAN, Appellant.**

**No. 1 CA–CR 90–1416.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 29, 1992.

Review Denied June 3, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Helene F. Abrams, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Presiding Judge.

In this appeal we consider the constitutionality of the custodial interference statute.

## FACTS

. Appellant David E. Bean ("defendant") was convicted following a jury trial of one count of custodial interference, a class six felony, in violation of Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–1302. Upon defendant's admission of two prior felony convictions and the court's finding of aggravating circumstances, the trial court sentenced defendant to a term of four years' imprisonment. The charges arose when defendant refused to return his son to the child's mother, to whom defendant was not married, after the mother allowed defendant limited visitation.

## ISSUES

On appeal, defendant contends (1) the custodial interference statute under which he was convicted violates the due process and equal protection clauses of the Arizona and United States Constitutions; therefore the trial court erred in denying his motion to dismiss on those grounds; (2) the trial court erred in failing to define for the jury "parental rights"; and (3) the trial court erred in finding an aggravating factor of emotional harm caused to the mother. None of the arguments provides grounds for reversal, and we affirm.

## DISCUSSION

A. *Constitutionality of Ariz.Rev.Stat. Ann. ("A.R.S.") section 13–1302*

A.R.S. section 13–1302 provides, in pertinent part:

A. A person commits custodial interference if, knowing or having reason to know that he has no legal right to do so, such person knowingly takes, entices, or keeps from lawful custody any child less than eighteen years of age or incompetent, entrusted by authority of law to the custody of another person or institution.

B. If a child is born out of wedlock, the mother is the legal custodian of the child for the purposes of this section until paternity is established and custody is determined by a court.

Arizona statutes provide that an unmarried father may initiate proceedings to establish his paternity by the filing of a verified complaint. *See* A.R.S. §§ 12–843 and 12–846; and *R.A.J. v. L.B.V.*, 169 Ariz. 92, 817 P.2d 37 (App.1991). In the alternative, the parents of a child born out of wedlock can voluntarily acknowledge paternity of the child by filing with the clerk of the superior court either a birth certificate signed by the mother and father, or an affidavit signed by both parents acknowledging paternity. A.R.S. § 12–852. Here, it is undisputed that, while defendant is in fact the biological father of the child, and was named as such by the mother on the birth certificate, defendant had not taken any of the steps statutorily required to establish his paternity.

Defendant makes a four-pronged attack on the constitutionality of A.R.S. section 13–1302(B) which, for the purposes of the custodial interference statute, makes the mother the legal custodian of a child born out of wedlock until paternity is established and custody is determined by a court. First, defendant contends the statutory distinction between a child's biological mother and the biological father whose paternity has not been established by a court violates both the equal protection and due process provisions of the Arizona and Federal Constitutions. Defendant further argues that those constitutional provisions are also violated by the implied distinction the statute draws between married and unmarried, separated or divorced fathers.

In support of his gender-based equal protection argument, defendant cites *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), for the proposition that the state may not subject men and women to disparate treatment when there is no substantial relation between the disparity and an important state interest. Defendant submits "there is no difference in the importance between the maternal and

paternal roles," and thus concludes there is no compelling state purpose for a distinction to be drawn based on their gender between unwed biological parents. We disagree.

The United States Supreme Court first recognized an unmarried father's constitutionally protected interest in a relationship with his child in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The Court also recognized, however, that such a right is not absolute and that protection of the child is also an important state interest. *See Lehr*, 463 U.S. at 257, 103 S.Ct. at 2991. In fact, as defendant concedes, the "paramount concern" in a child custody proceeding is not the rights of the parents but the best interests of the child. *See Smart v. Cantor*, 117 Ariz. 539, 541, 574 P.2d 27, 29 (1977). Thus, the importance of the paternal role in a child's development notwithstanding, we cannot say that equal custody rights between all *unmarried* fathers and mothers effectuate the best interests of the child. To the contrary, as suggested by one writer, such a practice could have "disastrous consequences" for the child. *See* Brigitte M. Bodenheimer, *New Trends and Requirements in Adoption Law and Proposals for Legislative Change*, 49 S.Cal.L.Rev. 10 (1975). As the statutory presumption at issue here operates to preserve the child's interest in stability, it is not without a compelling state interest such as referred to in *Lehr*. Moreover, because the presumption is operative only until paternity and custody in the child's best interest are established by a court, it does not go substantially beyond the protection of that interest.

Defendant also argues that he is similarly situated to the mother, and therefore entitled to protection equal to that provided to the child's mother as well as to married, divorced and separated fathers. *See Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (classification must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons under similar circumstances shall be treated alike). Again, we disagree.

In *Lehr*, the United States Supreme Court held that the natural father's rights under the due process and equal protection clauses were not violated by the failure of a New York statute to require notice and an opportunity to be heard before his child was adopted, as the father had never had any significant custodial, personal or financial relationship with the child. The Court concluded that if one parent has an established custodial relationship with the child and the other parent has either abandoned or never established such a relationship, the equal protection clause does not prevent a state from according the two parents different legal rights. 463 U.S. at 267–268, 103 S.Ct. at 2996–2997. In other words, because the parents were not similarly situated, they were not entitled to equivalent parental rights. The Tennessee Supreme Court recently grappled with this problem in a case to determine the "custody" or disposition of frozen preembryos. *Davis v. Davis*, 1992 WL 115574, 1992 Tenn. Lexis 400 (Tenn.1992).

As in *Lehr*, we conclude that the parents here are not similarly situated. The testimony at trial established that, while the mother provided daily supervision, care and financial support for the child from the time of his birth, defendant lived with the mother only sporadically, living at times in another city, and provided what at best can be described as minimal financial support. The evidence was undisputed at trial that defendant never took any steps whatsoever to establish his paternity or exercised any custodial or visitation rights and was not living with the mother and child in a *de facto* family relationship at the time of the abduction. The defendant's testimony at trial established that he was a boarder in the mother's home. When she became pregnant with the child, the defendant left. He did not return when the child was born, because he was in prison. Upon his release from prison defendant was paroled to the mother's home where he lived for six months with her, the child and other children of the mother from other relationships. After the six months' parole expired

the defendant moved to Bullhead City. During this time defendant lived at a hotel and the mother and child visited once for four days. Defendant did not send support money to them during this time. The mother and child attempted to move to Bullhead City to be with the defendant but left after one week. The relationship was extremely troubled and the mother tried to prevent defendant from visiting the child. The defendant was jailed once for domestic violence prior to the incident in this case. The defendant was never the caregiver or provider for the child. Thus, defendant and the natural mother were similarly situated in a biological sense only as in *Davis v. Davis.*

As the Supreme Court has recognized, "[p]arental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Caban v. Mohammed,* 441 U.S. 380, 397, 99 S.Ct. 1760, 1770, 60 L.Ed.2d 297 (1979) (Stewart, J. dissenting) (cited with approval in *Lehr,* 463 U.S. at 260, 103 S.Ct. at 2992). Because defendant and the natural mother were not similarly situated, nothing in the constitution prohibits defendant's prosecution under A.R.S. section 13–1302. *See People v. Carrillo,* 162 Cal.App.3d 585, 208 Cal.Rptr. 684 (1984) (due to father's failure to establish any parental relationship with child, difference in rights accorded to mothers and nonpresumed fathers by California statute governing right to custody of child of unwed mother did not infringe on father's right to equal protection of the laws and did not preclude his prosecution for child stealing).

■ Likewise, not all natural fathers are similarly situated. For some of the same reasons discussed above, the Supreme Court has determined that states are not foreclosed from recognizing differences in the extent of commitment made by fathers to the welfare of their children. *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). Specifically, the Court in *Quilloin* observed that, in contrast to an unwed father who has never exercised actual or legal custody over his child—and

thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection or care of the child—legal custody of children is a central aspect of the marital relationship, and even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage. *Id.* at 256, 98 S.Ct. at 555. Moreover, as noted by a California appellate court, a legislature is not unreasonable in concluding that the class of fathers who have taken no steps to legitimate their paternity nor lived with the child as a parent "will contain a substantial proportion of fathers who are strangers to the child," and a legal distinction drawn between classes of fathers on that basis is founded on sound public policy. *W.E.J. v. Superior Court,* 100 Cal.App.3d 303, 160 Cal.Rptr. 862 (1979). Again, because defendant has failed to take a single step as required by statute to establish his paternity, he cannot be said to be similarly situated with all married, divorced and separated fathers.

■ Defendant offers no explanation for his failure to establish his paternity but claims instead that the statutory requirement that he do so to gain custody or visitation rights violates his right to due process. The Supreme Court has specifically recognized, however, that the "mere existence of a biological link" does not create parental rights deserving of protection under the due process clause. *Lehr,* 463 U.S. at 261, 103 S.Ct. at 2993. Rather,

The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

*Id.* at 262, 103 S.Ct. at 2993 (Footnote omitted.)

As set forth above, the Arizona Legislature has adopted a statutory scheme for an unmarried father to establish his paternity and gain custodial or visitation rights with his child. The constitutional adequacy of those statutes is not an issue currently before us. Because A.R.S. section 13-1302 does not deprive defendant of any established parental rights nor prevent any such rights from being established, defendant's due process argument is without merit.

### B. *Jury Instructions*

■ Defendant next argues that, while the court defined "legal custody" for the jury, it did not define "the entire panoply of rights afforded to the parent of a child," which defendant contends includes an unwed father's right to visit his child. Because defendant did not object to the trial court's failure to give such an instruction, he may not claim error on appeal unless the failure to instruct rises to the level of fundamental error. *See e.g., State v. Whittle*, 156 Ariz. 405, 752 P.2d 494 (1988). Here, we find no error, much less fundamental error.

As we discussed in rejecting defendant's constitutional arguments, absent a determination of paternity, defendant did not have legal visitation rights to his child. *See also Thornsberry v. Superior Court*, 146 Ariz. 517, 707 P.2d 315 (1985) (prior adjudication of paternity or maternity required pursuant to A.R.S. section 25-331 before trial court has jurisdiction to grant custody or visitation to a putative parent). Whatever rights defendant does have as the child's biological father, they do not include the right to exclusive physical custody, which is the conduct proscribed by A.R.S. section 13-1302. There was no error in the court's custody instruction as given.

### C. *Aggravated Sentence*

■ In sentencing defendant, the trial court found that defendant's statements to the mother of the child that she would never see the child again were an aggravating circumstance in that the statements were made with cruelty and depravity and with an intent to cause the mother great emotional harm. Defendant contends that, because emotional harm is inherent in the offense of custodial interference, the court should not have considered his statements as an indication of cruelty or depravity. We disagree.

Neither cruelty, depravity nor emotional harm is an element of the offense of custodial interference. *See* A.R.S. § 13-1302. Emotional harm to the victim is an appropriate aggravating circumstance to be considered by a sentencing court, as is the cruel or depraved manner in which an offense is committed. *See* A.R.S. § 13-702(D). Accordingly, there was no error in the trial court's consideration of the statements made to the mother and imposition of an aggravated sentence based on those statements.

We have reviewed the record for fundamental error and found none. The conviction and sentence are affirmed.

LANKFORD and TOCI, JJ., concur.