170 P.3d 293

**STATE of Arizona, Appellee,**

v.

**Mayra Isabel BARRAZA, Appellant.**

**No. 1 CA–CR 06–0283.**

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 20, 2007.

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and John L. Saccoman, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Sharmila Roy, Deputy Public Defender, Phoenix, Attorneys for Appellant.

BARKER, Judge.

¶ 1 In a capital murder case, the capital aggravator of "especially heinous, cruel or depraved" under Arizona Revised Statutes ("A.R.S.") section 13–703(F)(6) (Supp.2006) may only be invoked in compliance with the factors set forth in *State v. Murdaugh*, 209 Ariz. 19, 31, ¶ 59, 97 P.3d 844, 856 (2004). The primary issue in this opinion is whether compliance with the *Murdaugh* factors is also required in a *non*-capital homicide for there to be a valid *non*-capital aggravator of "especially heinous, cruel or depraved" under A.R.S. § 13–702(C)(5).

¶ 2 We hold that the *Murdaugh* factors may serve as a guide in non-capital cases under § 13–702(C)(5), but that strict compliance with them is neither appropriate nor required. Accordingly, we affirm.

## I.

¶ 3 Mayra Isabel Barraza ("Barraza") appeals from the trial court's imposition of a twenty-two year aggravated sentence for her conviction of second degree murder. On May 4, 2001, Gregorio Espinoza ("Espinoza"), a forty-seven-year-old landscaper, picked up Barraza, seventeen years old at the time, for a date at approximately 8:30 p.m. Barraza met Espinoza when Espinoza did landscaping work for the neighbors of a family Barraza babysat for. Barraza claimed that Espinoza did not have any romantic interest in her and that he knew she was homosexual. When Espinoza picked Barraza up on May 4, 2001, Espinoza stopped to purchase beer and then took her back to his house so that he could take a shower.

¶ 4 While at Espinoza's house, Barraza stabbed Espinoza sixty times with a knife. Espinoza, who was five feet, two inches in height and weighed 139 pounds, bled to death in "a matter of minutes." The wounds covered Espinoza's chest, back, and neck, in addition to defensive wounds on the hands and forearms.[1] Espinoza's brother discovered the body and called the police.

1. Dr. Phillip Keen, who conducted Espinoza's autopsy, testified as to Espinoza's wounds in full:

¶ 5 When the police arrived at Espinoza's house, they found a bloody towel used to wipe something, diluted blood in the sink, and a bloody footprint and handprint later identified as Barraza's. The police also found a piece of paper in Espinoza's truck with Barraza's name, address, and phone number.

¶ 6 The police subsequently contacted Barraza. Barraza denied ever having been at Espinoza's house and claimed that she was with friends on May 4, 2001. The police attempted to verify her story, but it proved to be false. During a third interview with police, which took place May 11, 2001, Barraza admitted to being with Espinoza on May 4, 2001. Barraza claimed that, although she is homosexual, she "plays men for money." Barraza admitted, "I take their money and stuff. . . . Mostly they take me shopping, and they pay for everything that I buy, and so I just use them for rides." She had asked Espinoza for money as well. Barraza explained that on May 4, 2001, when she was at Espinoza's house and he claimed to be getting in the shower, Barraza went in the master bedroom. Espinoza, who was naked, then came at her, pushed her on the bed, and sexually assaulted her. She attempted to fight him off and was able to reach her purse, which held a knife that she carried for protection. She claimed that she did not know how many times she stabbed him. Barraza then remembered going to the bathroom and washing her hands. She took Espinoza's keys and left the house. She attempted to take his truck, but it would not start. She began walking home, then later got a ride from a stranger.

¶ 7 The police also interviewed S. Gonzales, a friend of Barraza. Gonzales testified that approximately one week before Espinoza's murder she was watching television with Barraza when Barraza, commenting on what they saw on television, said she wanted to "kiss a guy and slit his throat." Barraza pulled out a knife and showed it to Gonzales.

Gonzales testified that she thought Barraza was joking, but that Barraza said, "[w]atch, I'll do it. I'm going to do it, watch." Gonzales said that Barraza wanted to "tell them she could suck on their neck and then slice their throats and take their money." Gonzales took the knife from Barraza because, even though she "took it as a joke," she wanted to "make[ ] sure." Both Gonzales and Barraza forgot about the knife.

¶ 8 Barraza was charged with one count of first degree murder. A jury found Barraza guilty of the lesser-included offense of second degree murder. At Barraza's sentencing hearing, held June 21, 2002, the trial court found as mitigating factors Barraza's age and lack of prior criminal involvement. The court also found aggravating factors, including that it was an "egregious, brutal, calculated thrill killing that has caused substantial emotional harm." The court believed that it was necessary "to protect society from what the Court believes to be a dangerous and disturbed young woman," and accordingly sentenced her to the maximum aggravated term of twenty-two years imprisonment.

¶ 9 On July 2, 2002, Barraza timely appealed her conviction to the Court of Appeals. This court affirmed Barraza's conviction. *State v. Barraza*, 209 Ariz. 441, 104 P.3d 172 (App.2005). However, we simultaneously filed a memorandum decision in which we vacated Barraza's sentence as it did not comply with the sentencing requirements established in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Barraza*, 1 CA–CR 02–0591 (Ariz. App. Jan. 11, 2005) (mem.decision). Accordingly, we remanded for resentencing.

¶ 10 On July 7, 2005, the State filed an allegation of aggravating circumstances, including:

▪ The offense(s) involved the use, threatened use or possession of a deadly weapon or dangerous instrument during

---

Three of the wounds in the back were able to penetrate to the level of the left lung, one to the level of the right lung, but the fatal complex of injuries was to the neck, in which he had a wound which severed the right carotid artery, the right external jugular vein, the right lobe of the thyroid, and the right submandibular salivary gland, basically a wound that's slashing in from the skin surface to almost the level of the spine, and catching both venous and arterial blood supply on the right side of the neck.

the commission of the crime, specifically a knife.

■ The defendant committed the offense(s) in an especially heinous, cruel, or depraved manner.

■ The offense(s) caused physical, emotional or financial harm to the victim or, if the victim died as a result of the conduct of the defendant, caused emotional or financial harm to the victim's immediate family.

A jury trial was held on February 7, 2006 regarding Barraza's resentencing and the alleged aggravating factors. The jury was presented with a large portion of the testimony presented at Barraza's original trial. Although Gonzales did not testify at the resentencing, Barraza admitted at the resentencing that, while watching television with friends before the murder, she showed them a knife and stated that she wanted to stab someone. At the close of the evidence, the jury found that all three aggravating factors had been proven beyond a reasonable doubt. The court subsequently sentenced her to the aggravated term of twenty-two years of imprisonment. Barraza timely filed a notice of appeal from the sentence. This court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003) and 13–4033(A) (2001).

## II.

¶ 11 We address in this opinion two issues [2] Barraza raises on appeal: 1) whether there was sufficient evidence to show that the murder was especially heinous, cruel, or depraved; [3] and 2) whether the jury instruction regarding heinousness, cruelty, or depravity was error. We address each argument below.

## III.

### A.

¶ 12 Barraza argues that there was insufficient evidence to find that the murder was especially heinous, cruel, or depraved be-

cause the evidence did not show that Barraza relished the murder, needlessly mutilated Espinoza, or inflicted gratuitous violence on Espinoza. Barraza relies on the factors enumerated in *State v. Murdaugh*, 209 Ariz. 19, 31, ¶ 59, 97 P.3d 844, 856 (2004), which describe when heinousness, cruelty, or depravity exists in capital cases. Section 13–703(F)(6) lists a finding that "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner" as an aggravating circumstance which may be used to raise a first degree murder sentence to the death penalty. Similarly, A.R.S. § 13–702(C)(5) provides for the "[e]specially heinous, cruel or depraved manner in which the offense was committed" to be considered as an aggravating circumstance in non-capital offenses. Although the statutes are worded almost identically, their application has been disparate.

■ ¶ 13 In *Murdaugh*, the Arizona Supreme Court enumerated five factors that must be considered when determining whether a capital offense was committed with heinousness or depravity pursuant to A.R.S. § 13–703(F)(6):

> 1) whether the defendant relished the murder; 2) whether the defendant inflicted gratuitous violence on the victim; 3) whether the defendant needlessly mutilated the victim; 4) the senselessness of the crime; and 5) the helplessness of the victim.

209 Ariz. at 31, ¶ 59, 97 P.3d at 856 (derived from *State v. Sansing*, 206 Ariz. 232, 237, ¶ 17, 77 P.3d 30, 35 (2003) and *State v. Gretzler*, 135 Ariz. 42, 52, 659 P.2d 1, 11 (1983)). Barraza asserts error based on an insufficiency of evidence regarding the first three *Murdaugh* factors. However, a finding of heinousness, cruelty, or depravity under A.R.S. § 13–702(C)(5) for non-capital offenses does not *require* compliance with *Murdaugh*, which was a capital case dealing

---

**2.** A third issue does not meet the standard for publication under Rule 111 of the Rules of the Arizona Supreme Court. It is addressed in a simultaneously filed memorandum decision.

**3.** We subsume in this argument the issue whether Barraza's Rule 20 motion, based on insuffi-

cient evidence, was properly denied. Because, as explained herein, there was sufficient evidence, we do not take up the issue of whether Rule 20 of the Arizona Rules of Criminal Procedure applies to non-capital sentencings that are now conducted pursuant to *Blakely*.

with 703(F)(6) rather than a non-capital case dealing with 702(C)(5). Our cases show that a jury's finding of heinousness, cruelty, or depravity as a non-capital aggravating circumstance may be established without compliance with *Murdaugh*. *See, e.g., State v. Bean*, 174 Ariz. 544, 548, 851 P.2d 843, 847 (App.1992) (affirming an aggravated sentence for custodial interference on the grounds that the crime was cruel and depraved, without consideration of the defendant's relishment, gratuitous violence, or mutilation in the offense); *State v. Meador*, 132 Ariz. 343, 347, 645 P.2d 1257, 1261 (App.1982), *superseded on other grounds by* A.R.S. § 13–702(D) *as stated in State v. Molina*, 211 Ariz. 130, 137, ¶ 24, 118 P.3d 1094, 1101 (App.2005) (affirming a finding of heinous, cruel, or depraved manner of a second degree murder without considering any of the *Murdaugh* factors).[4]

■ ¶ 14 We note that A.R.S. § 13–702(C)(5) is statutorily available as an aggravating circumstance for *all* felonies. *See* A.R.S. § 13–702(A). The language in A.R.S. § 13–703(F)(6), which the Arizona Supreme Court interpreted in *Murdaugh*, applies only to "aggravating circumstances *in determining whether to impose a sentence of death.*" A.R.S. § 13–703(F) (emphasis added). The *Murdaugh* factors were created to assist in determining whether to impose the death penalty. This is so because the death penalty is only to be imposed when "the crime [which] was committed raises it above the norm of first degree murders, or the background of the defendant places the defendant above the norm of first degree murderers." *State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988).

¶ 15 To require that the *Murdaugh* factors be met in every *non-capital* case in which the sentence is sought to be aggravated pursuant to A.R.S. § 13–702(C)(5) would effectively eliminate that statutory aggravator from consideration in many (if not all) non-capital felonies.[5] For example, in *Bean* the defendant was given an aggravated sentence based on heinousness, cruelty, or depravity for his conviction of custodial interference when he refused to return his son to the child's mother. 174 Ariz. at 545, 851 P.2d at 844. The court found heinousness, cruelty, or depravity based on the defendant's statement to the child's mother that she would never see the child again. *Id.* at 548, 851 P.2d at 847. Although *Murdaugh* does not hold that all five factors must be established, 209 Ariz. at 31, ¶ 59, 97 P.3d at 856, it holds that two of them, "[s]enselessness and helplessness, do not by themselves establish that the crime was heinous or depraved unless the State establishes additional circumstances that separate the crime from the 'norm' of first degree murders." *Id.* at 33, ¶ 67, 97 P.3d at 858. The aggravating circumstance in *Bean* clearly could not pass this test. Likewise, the availability of the 702(C)(5) aggravator would be inappropriately eliminated in many other circumstances if *Murdaugh* was applied.

■ ¶ 16 Accordingly, we hold that compliance with *Murdaugh* is not required to establish the "especially heinous, cruel or depraved" aggravator under § 13–702(C)(5). We do not hold that the *Murdaugh* factors may not be used to provide guidance in certain cases, particularly with regard to non-capital homicides. For instance, in *State v. Stanhope*, 139 Ariz. 88, 94–95, 676 P.2d 1146,

---

4. The concurrence argues that the issue of compliance with *Murdaugh* "is not an issue presented in this case." We disagree. The State specifically argued that the reliance on "capital cases is misplaced. Here, as in other non-capital cases the 'especially heinous cruel or depraved' aggravating factor in A.R.S. § 13–702(C)(5) is justified and applied on much broader grounds that in its capital counterpart." *Appellant's Opening Brief* at 9; *see also Appellant's Opening Brief* at 13 (citing to *Bean* and *Meador* and arguing that "[b]ecause this is a non-capital case the jurors would have been justified in finding heinousness or depravity even in the absence of the five factors outlined in [*Murdaugh* ]").

5. Our separately concurring colleague agrees that 702(C)(5) by its terms, may be sought for all non-capital felonies. *Infra* ¶ 48. She asserts that not all non-capital felonies will support its application. We agree that on the *facts* the 702(C)(5) aggravator may or may not apply with regard to a particular felony. Our concern, however, is that the judicial test from *Murdaugh*, which was established for capital offenses, should not act as a *legal* barrier to a statute (702(C)(5)) enacted to apply to non-capital offenses.

1152–53 (App.1984), the court relied on the Arizona Supreme Court's definition of "cruel" and "depraved" from capital cases (*Gretzler*, 135 Ariz. at 51, 659 P.2d at 10 (1983) and *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977)) to find that the non-capital statutory aggravator was met in an aggravated assault case in which the defendant put victims on top of each other and stabbed them. Likewise, in *State v. Inglish*, 129 Ariz. 444, 445–46, 631 P.2d 1102, 1103–04 (App. 1981), the court relied on capital cases to uphold the non-capital statutory aggravator when the defendant was convicted of second degree murder after placing the victim's body in a mine shaft and burning it. As the circumstances in each case were viewed as qualifying under the capital standard the court did not determine (nor was the issue presented) whether compliance with the capital case law was *required* in a non-capital setting as contrasted with being implemented for guidance as the circumstances warranted. That is the issue we face here.

¶ 17 As stated above, if the capital standard is met, then the non-capital standard would also be met, but compliance with the capital standard is not *required* in a non-capital case, nor is it clear how it reasonably could be required in a non-capital setting as the aggravator in the capital setting is only to apply to murders which are "above the norm of first degree murders." *Fulminante*, 161 Ariz. at 258, 778 P.2d at 623. This is a standard that a conviction for second degree murder, aggravated assault, or other non-first degree murder offenses could not meet as a matter of law.

██ ¶ 18 Further, by holding that compliance with the *Murdaugh* factors is not required, but that they may be used for guidance as applicable, we do not suggest that the terms "heinous," "cruel," or "depraved" have now become amorphous and are left undefined. As the Arizona Supreme Court stated in a capital case, "[t]he words 'heinous, cruel or depraved' have meanings that are clear to a person of average intelligence and understanding." *Knapp*, 114 Ariz.

at 543, 562 P.2d at 716. The supreme court went on to provide the Webster's Third New International Dictionary definitions of those terms:

> heinous: hatefully or shockingly evil: grossly bad.
>
> cruel: disposed to inflict pain esp[ecially] in a wanton, insensate or vindictive manner: sadistic.
>
> depraved: marked by debasement, corruption, perversion or deterioration.

*Id.* We have no quarrel with, and affirm, those *definitions* as applied to the non-capital aggravator for the terms "heinous, cruel or depraved" stated in § 13–702(C)(5). *See Inglish*, 129 Ariz. at 446, 631 P.2d at 1104 (utilizing the definitions from *Knapp* in a non-capital setting under § 13–702(C)(5)). What we reject is a *requirement* that every non-capital case applying the § 13–702(C)(5) aggravator must necessarily comply with *Murdaugh* (and other capital cases elaborating on those definitions) in determining whether the evidence satisfies those definitions of heinous, cruel or depraved.

¶ 19 As stated earlier, the tests or standards applied to determine whether the definitions of "heinous, cruel or depraved" are satisfied in a capital context were devised with that specific offense in mind and in many instances simply have no application to any number of non-capital offenses. As another example, *Murdaugh* requires that a factfinder "must consider," but not necessarily find, that the defendant "needlessly mutilated" the victim. 209 Ariz. at 31, ¶ 59, 97 P.3d at 856. In a non-capital case, physical injury may not even be an element of the offense to which application of the "cruel, heinous or depraved" aggravator is sought. Application of the non-capital aggravator under § 13–702(C)(5) may be sought for all non-capital felonies, be they for trafficking in stolen property (A.R.S. § 13–2307 (2001)), fraud (A.R.S. § 13–2310 (2001)), forgery (A.R.S. § 13–2002 (2001)), or any of the host of other non-physically invasive criminal offenses defined by our legislature.[6] *See gen-*

6. The concurrence argues that the *Murdaugh* factors need to be adopted as "reasonable people can rightly conclude that all rapes are shockingly evil." *Infra* ¶ 42. Thus, the concurrence suggests that 702(C)(5) has no "moorings" if compliance with *Murdaugh* is not required. We are not

*erally* A.R.S. Title 13. Certainly, it makes no sense that a jury "must consider" needless mutilation in such a setting. *See Murdaugh,* 209 Ariz. at 31, ¶ 59, 97 P.3d at 856.

¶ 20 In sum, to require compliance with *Murdaugh* in a non-capital setting takes *Murdaugh* out of the specific statutory context in which it was decided and would vitiate the Legislature's provision of an "especially heinous, cruel or depraved" aggravator in a non-capital setting. For those reasons, and those others set forth above, we reject Barraza's assignment of error on this ground.

### B.

■ ¶ 21 We turn now to the specific evidence supporting the aggravator here. In reviewing a claim of insufficiency of evidence, we will affirm "as long as there is reasonable evidence in the record to substantiate the aggravating circumstances found by the trial court." *Meador,* 132 Ariz. at 348, 645 P.2d at 1262. In *Meador,* we affirmed a finding of exceptional heinousness, cruelty, and depravity when the defendant was convicted of second degree murder. 132 Ariz. at 344–45, 645 P.2d at 1258–59. In that case, the victim was giving the defendant a ride when they pulled the car over and walked to a desert area to urinate. *Id.* The defendant then struck the victim in the head with a large rock, leaving him unconscious, and took the victim's car. *Id.* at 345, 645 P.2d at 1259. The victim's body was later found in a creek bed, where he had died of a skull fracture. *Id.* We stated:

> It is clear from the record that the trial court based the finding of aggravation here on a number of factors, including, but not limited to, the fact that the defendant did not seek assistance for the helpless victim. There is reasonable evidence in the record establishing that the defendant struck the victim, dragged him to a creek bed, removed his shoes and wallet, and drove away in the victim's car.

suggesting, and do not hold, that other judicial tests similar to the *Murdaugh* factors may not be applied as to non-capital felonies. Our holding is that compliance with *Murdaugh* is not *required* under 702(C)(5). That is the specific issue with which we are presented. As we point out, por-

*Id.* at 347, 645 P.2d at 1261. Accordingly, the finding of heinousness, cruelty, and depravity was deemed proper.

■ ¶ 22 The number of stab wounds inflicted on Espinoza, totaling sixty, demonstrates the particularly cruel nature of the murder. The autopsy showed that Espinoza died in a matter of minutes from blood loss. The murder was especially heinous and depraved considering Barraza's statement to friends before the murder that she wanted to kill someone. Barraza's acts following the murder of washing off, wiping the knife, and stealing Espinoza's keys demonstrate the depraved nature of the crime. As in *Meador,* Barraza's failure to procure help for Espinoza is also relevant to the aggravating circumstance. We therefore hold that there was reasonable evidence supporting the finding that the crime was especially heinous, cruel, and depraved under A.R.S. § 13–702(C)(5).

### IV.

¶ 23 Barraza next argues that the jury instruction regarding whether the crime was especially heinous, cruel, or depraved was improper. Specifically, Barraza claims that the court's instruction to the jury that it could consider whether the murder was senseless or the victim helpless was error because senselessness and helplessness are not, standing alone, sufficient to find heinousness, cruelty, or depravity.

¶ 24 The court instructed the jury that, to find heinousness and depravity, it must find the "[i]nfliction of gratuitous violence on the victim beyond that necessary to kill" or "[m]utilation of the victim's body." The court went on to say:

> To assist you in determining whether a crime is heinous or depraved, you may consider whether: 1. The murder was senseless; or 2. Helplessness of the victim.... Neither senseless nor helplessness standing alone are sufficient to prove that this murder was heinous or depraved.

tions of *Murdaugh* may be appropriate for guidance in a non-capital setting. We are neither accepting nor rejecting, because it is not before us, an "above the norm" standard for say, sexual assaults, in determining whether the 702(C)(5) aggravator would apply.

The court crafted these instructions itself, based on *Murdaugh*, noting they were "very similar" to those proposed by defense counsel. The State's proposed jury instruction on this issue was also based on cases in which the crime at issue was first degree murder and the relevant standards for heinousness, cruelty, or depravity pertained to the capital aggravating factor under A.R.S. § 13–703(F)(6) or its predecessor statute.[7] Thus, the jury instruction prepared by the court substantially mirrored the factors enumerated in *Murdaugh*. 209 Ariz. at 31, ¶ 59, 97 P.3d at 856.

¶ 25 Barraza alleges the instruction is in error as it permits a finding that the crime was "heinous or depraved" if both senseless and helplessness are found, but no other factor as set forth in *Murdaugh*. We acknowledge that *Murdaugh* states, "senselessness *and* helplessness do not by themselves establish that the crime was heinous or depraved unless the state establishes additional circumstances that separate the crime from the 'norm' of first degree murders." 209 Ariz. at 33, ¶ 67, 97 P.3d at 858 (emphasis added). Whether or not this would be error in a capital case proceeding under A.R.S. § 13–703(F)(6), we need not decide.

¶ 26 We reiterate, as stated above, that compliance with *Murdaugh* is not required for heinousness, cruelty, or depravity to be found as an aggravating circumstance in non-capital cases under A.R.S. § 13–702(C)(5). *See supra* ¶¶ 11–17. A finding that the victim was helpless or the crime was senseless or both, may be sufficient, standing alone, to support a finding of "especially heinous, cruel, or depraved" under A.R.S. § 13–702(C)(5). This will depend on all the facts and circumstances of the case.

¶ 27 As we previously set forth, *Murdaugh's* requirements may provide guidance in considering whether a non-capital offense is especially heinous, cruel or depraved, but they should not be used to determine the issue. *See supra* ¶¶ 11–17. Additionally, *Murdaugh* itself explains that senselessness and helplessness may be sufficient to find heinousness or depravity if there are "additional circumstances *that separate the crime from the 'norm' of first degree murders.*" 209 Ariz. at 33, ¶ 67, 97 P.3d at 858 (emphasis added). Barraza was convicted of second degree murder. It makes no sense to inform a jury in a sentencing proceeding for *second* degree murder that it could only base a finding of heinousness, cruelty, or depravity on senselessness or helplessness if it found additional circumstances raising Barraza's crime *above the norm* of *first degree* murders.

¶ 28 The trial court's jury instructions were erroneous to the extent they *required* the jury to meet the standard set forth in *Murdaugh*. However, this was an error that benefited Barraza. We therefore reject Barraza's claim in this regard.

## V.

¶ 29 For the foregoing reasons, and those set forth in the simultaneously filed memorandum decision, we affirm Barraza's sentence.

CONCURRING: JON W. THOMPSON, Judge.

NORRIS, Judge, concurring in part; dissenting in part.

¶ 30 In *Furman v. Georgia,* a majority of the United States Supreme Court agreed that imposition of the death penalty violated the 8th and 14th Amendments because the statutory schemes under consideration allowed the death penalty to be imposed in an arbitrary fashion. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The sentencing authorities had been given uncontrolled discretion and were not subject to any consistent standards governing selection of the

---

7. The cases that the State cites in support of its proposed jury instruction regarding the especially heinous, cruel, or depraved factor are: *State v. Medina,* 193 Ariz. 504, 975 P.2d 94 (1999); *State v. Murray,* 184 Ariz. 9, 906 P.2d 542 (1995); *Knapp,* 114 Ariz. 531, 562 P.2d 704; *State v. Doerr,* 193 Ariz. 56, 969 P.2d 1168 (1998); *State v. Amaya–Ruiz,* 166 Ariz. 152, 800 P.2d 1260 (1990); *State v. Richmond,* 180 Ariz. 573, 886 P.2d 1329 (1994); *State v. Stanley,* 167 Ariz. 519, 809 P.2d 944 (1991); *State v. Milke,* 177 Ariz. 118, 865 P.2d 779 (1993). They are all capital cases.

death penalty. In practical effect, *Furman* invalidated this state's death penalty statute. *In re Tarr*, 109 Ariz. 264, 265, 508 P.2d 728, 729 (1973) (*Furman* "abolished" Arizona's death penalty statute).

¶ 31 In response, our state legislature amended Arizona's death penalty statute, and, along with other procedural requirements, directed the sentencing judge to consider evidence supporting or controverting various aggravating and mitigating circumstances. 1973 Ariz. Sess. Laws, ch. 138, § 5 (1st Reg.Sess.). By specifying these circumstances, the legislature was attempting to guide the sentencing judge in distinguishing between those murders that warranted imposition of the death penalty from those that did not. One of the aggravating circumstances specified by the legislature was whether the defendant had "committed the offense in an especially heinous, cruel or depraved manner" (the "capital aggravator"). Ariz.Rev.Stat. ("A.R.S.") § 13–703(F)(6) (Supp.2006).

¶ 32 In *State v. Knapp*, the Arizona Supreme Court turned to a dictionary to define these terms ("*Knapp* definitions"). 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977). Subsequently, the supreme court delineated factors to guide the sentencing authority in determining whether a murder was indeed committed in a "heinous, cruel or depraved manner." *See State v. Gretzler*, 135 Ariz. 42, 50–53, 659 P.2d 1, 9–12 (1983) (citing cases). These factors, which the majority refers to as the *Murdaugh* factors, *supra* ¶ 1, *State v. Murdaugh*, 209 Ariz. 19, 31–33, 97 P.3d 844, 856–58 (2004) (resummarizing factors identified in *Gretzler* and citing post-*Gretzler* cases), provide standards to the operative terms of the capital aggravator thus providing the necessary narrowing construction required to render that aggravating circumstance constitutional. *Walton v. Arizona*, 497 U.S. 639, 654–55, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990); *State v. Hampton*, 213 Ariz. 167, 176–77, ¶¶ 35, 41, 140 P.3d 950, 959–60 (2006).

¶ 33 Today, the majority holds the *Murdaugh* factors are not applicable to A.R.S. § 13–702(C)(5) (the "non-capital aggrava-

tor"), even though this provision is virtually identical to the capital aggravator. The majority reasons that "to require compliance with *Murdaugh* in a non-capital setting takes *Murdaugh* out of the specific statutory context in which it was decided and would vitiate the Legislature's provision of an 'especially heinous, cruel or depraved' aggravator in a non-capital setting." *Supra* ¶ 20. In my view, the issue the majority says it must address—the "relationship" between the capital aggravator and its non-capital counterpart, *supra* ¶ 1, so it can reach this conclusion is not an issue presented in this case and therefore is not one we must decide. Further, even if we needed to decide this issue, I disagree with the majority's resolution of it.

¶ 34 The State, Barraza and the superior court tried this case on the basis that the *Murdaugh* factors controlled the meaning of the non-capital aggravator. The parties' proposed jury instructions concerning the non-capital aggravator rested solely on cases decided by our supreme court applying the capital aggravator. *Supra* ¶ 24, n. 7. The superior court instructed the jury on the meaning of the non-capital aggravator—without objection from either the State or Barraza—by describing, with one exception, the *Murdaugh* factors.[8] Although on appeal, the State argues the non-capital aggravator is "justified and applied on much broader grounds than … its capital counterpart," an argument the majority appears to adopt, *supra* ¶ 26, the State is in no position to make this argument having urged the superior court to instruct the jury on the *Murdaugh* factors.

¶ 35 The "relationship" of the capital aggravator to the non-capital aggravator is not an issue we need to address for another reason. The jury was properly instructed on the *Murdaugh* factors and the evidence supported the jury's finding that Barraza committed the murder in an "especially heinous, cruel or depraved manner."

¶ 36 As I noted above, the Arizona Supreme Court has delineated factors that provide substance and content to the meaning of the words "especially heinous, cruel or de-

---

**8.** The court did not instruct the jury on "relish-    ing."

praved" in a number of cases involving imposition of the death penalty. As the court has explained, cruelty looks to the pain of the victim, either physical pain or mental distress. *Gretzler*, 135 Ariz. at 51, 659 P.2d at 10. "To find that a victim suffered mental anguish or physical pain, the victim must have been conscious during at least some portion of the crime and the defendant either must have known or should have known that the victim would suffer." *State v. Jones*, 205 Ariz. 445, 449, ¶ 12, 72 P.3d 1264, 1268 (2003); *cf. Gretzler*, 135 Ariz. at 51, 659 P.2d at 10 (cruelty is not shown when there is "no evidence that the victims actually suffered physical or mental pain" before death).

¶ 37 Heinous and depraved refer to the defendant's mental state. *Gretzler*, 135 Ariz. at 51, 659 P.2d at 10. These words focus on the defendant's state of mind as shown by his or her words and actions at or near the time of the offense. *Murdaugh*, 209 Ariz. at 31, ¶ 59, 97 P.3d at 856. In the capital statutory context, the Arizona Supreme Court has identified five circumstances that evidence heinous or depraved conduct: first, whether the defendant relished the murder; second, whether the defendant inflicted gratuitous violence on the victim; third, whether the defendant needlessly mutilated the victim; fourth, whether the murder was senseless, that is, unnecessary for the defendant to achieve his or her objective; and fifth, whether the victim was helpless. *Id.; Gretzler*, 135 Ariz. at 52–53, 659 P.2d at 11–12 (citing cases). Not all five of these factors must be present in order to find that a killing was especially heinous or depraved. *Murdaugh*, 209 Ariz. at 31, ¶ 59, 97 P.3d at 856. But, because the fourth and fifth factors—senselessness and helplessness—tend to reveal less about a defendant's state of mind than the first three factors, the fourth and fifth factors, without the presence of other factors or circumstances, are usually insufficient to establish that the crime was heinous or depraved. *Id.* at 33, ¶ 67, 97 P.3d at 858; *State v. Prince*, 206 Ariz. 24, 27, ¶ 10, 75 P.3d 114, 117 (2003); *Gretzler*, 135 Ariz. at 52–53, 659 P.2d at 11–12.

¶ 38 In this case, as requested by the parties, the jury was instructed on the *Mur-daugh* factors. Contrary to Barraza's argument on appeal, the jury was not improperly instructed that it could find the murder was especially heinous or depraved based solely on a finding of helplessness and senselessness. Without objection from counsel, the court instructed the jury as follows:

A murder is especially heinous if it is "hatefully or shockingly evil." A murder is depraved if "marked by debasement, corruption, perversion or deterioration." The terms "heinous" and "depraved" focus upon a defendant's state of mind at the time of the offense, as reflected by her words and acts. In order to find heinousness or depravity, you *must* find that the defendant had such a mental state exhibited by engaging in at least one of the following actions:

1.  Infliction of gratuitous violence on the victim beyond that necessary to kill;

2.  Mutilation of the victim's body.

(Emphasis added).

¶ 39 After describing what was meant by gratuitous violence and mutilation, the court then instructed the jury as follows:

To assist you in determining whether a crime is heinous or depraved, you *may* consider whether:

1.  The murder was senseless; or

2.  Helplessness of the victim.

All murders are "senseless" because of their brutality and finality. Yet not all are senseless as the term is used to distinguish murders that warrant an enhanced penalty and those that do not. Rather, a "senseless" murder is one that is unnecessary to achieve the defendant's criminal purpose.

"Helplessness" is proven when the victim is unable to resist.

*Neither "senselessness" nor "helplessness", [sic] standing alone, are sufficient to prove that this murder was heinous or depraved.*

(Emphasis added).

¶ 40 If read in isolation, the last sentence italicized in the foregoing paragraph could be read as suggesting that a finding of both helplessness and senselessness could, without any other circumstance, support a finding of heinousness or depravity. However, the in-

struction, when viewed as a whole, required the jury to find at least one other circumstance—gratuitous violence or mutilation—to make such a finding. *Supra* ¶ 38 ("you must find"). The jury was clearly instructed that unless it found gratuitous violence or mutilation, it could not find Barraza had committed the murder in a heinous or depraved manner. Although the instruction could have been worded more clearly,[9] the instruction adequately informed the jury that merely finding senselessness and helplessness would not support a finding that the murder was heinous or depraved. *State ex. rel. Thomas v. Granville*, 211 Ariz. 468, 471, ¶ 8, 123 P.3d 662, 665 (2005) (jury instructions must be read "as a whole to ensure that the jury receives the information it needs to arrive at a legally correct decision"); *State v. Rutledge*, 197 Ariz. 389, 393, ¶ 15, 4 P.3d 444, 448 (App.2000) (appellate court will "not review a single sentence of jury instructions out of context" but views "the jury instructions in their entirety to determine whether they adequately reflect the law").

¶ 41 Given how this case was tried and how the jury was instructed, the State presented sufficient evidence showing Barraza murdered the victim in an "especially heinous, cruel or depraved manner." Barraza stabbed the victim 60 times. The victim sustained cuts to his hands, forearms, chest and back. The victim also sustained deep cuts to his neck. According to the medical examiner, only certain of the cuts—the deep cuts to the victim's neck—caused the victim's death; the rest of the cuts were all in excess of what was needed for the murder, and caused the victim pain. The cuts to the victim's hands and forearms, consistent with defensive wounds, indicated the victim was conscious during at least part of the attack. Additionally, Barraza told police officers that after the attack, she had returned to the victim's bedroom to retrieve her purse and that while she was in the room, the victim was still moving and making noise. The victim was, thus, still alive and quite possibly conscious even after the attack had ended. Yet, the defendant left the victim to essentially bleed to death. Accordingly, I agree

with the majority that the State presented sufficient evidence establishing beyond a reasonable doubt the elements of the non-capital aggravator. And, because the jury was properly instructed on the *Murdaugh* factors and the evidence supported the jury's finding of the elements of the non-capital aggravator, I join the majority in affirming Barraza's sentence.

¶ 42 The majority, however, goes beyond affirming Barraza's sentence. The majority holds the finder of fact in a non-capital case can find that the offense was committed in a heinous, cruel or depraved manner without "compliance with the *Murdaugh* factors," and that the non-capital aggravator should be defined by the *Knapp* definitions. *Supra* ¶ 18. In my view, the *Knapp* definitions, by themselves, fail to give the finder of fact in a non-capital case sufficient, meaningful guidance in determining whether an offense was in fact committed in a heinous, cruel or depraved manner.

¶ 43 The words "heinous, cruel or depraved" as well as the *Knapp* definitions of these words can be applied to a variety of circumstances. "Heinous, cruel or depraved" as well as the *Knapp* definitions of heinous (shockingly evil, grossly bad), cruel (disposed to inflict pain) or depraved (debasement, corruption, perversion or deterioration), can mean different things to different people. Reasonable people can rightly conclude that all rapes are shockingly evil, that all arsons are grossly bad, that all assaults by an adult against a child are disposed to inflict pain, that all sexual contact by adults with minors is perverse and that all acts of bribery of public servants amount to corruption. But, our legislature did not intend the non-capital aggravator to come into play except in unusual circumstances—when the offense was committed in a manner beyond or in excess of the norm.

¶ 44 In 1977, our state legislature enacted a new criminal code that became effective on October 1, 1978. 1977 Ariz. Sess. Laws, ch. 142 (1st Reg.Sess.). The legislature retained the capital sentencing system it had adopted

---

9. For example, see the instructions concerning senselessness and helplessness quoted in *State v.* *Hampton*, 213 Ariz. 167, 176–77, ¶¶ 37–39, 140 P.3d 950, 959–60 (2006).

in response to *Furman*, and of significance to the issue the majority takes on here, enacted a very similar system for non-capital offenses. The legislature jettisoned indeterminate sentencing—a system that allowed wildly disparate sentences to be imposed on different defendants who committed the same crime under essentially the same circumstances—and replaced it, for most crimes, with presumptive sentencing. *See generally State v. Bly*, 127 Ariz. 370, 372, 621 P.2d 279, 281 (1980); Rudolph J. Gerber, *Criminal Law of Arizona* 91–95 (State Bar of Arizona 1978) (explanation and comment on presumptive sentence framework adopted by the legislature). That system, still in effect today, albeit with numerous amendments, classifies crimes by placing them into groups of similar severity and then establishes a presumptive sentence for each group of crimes committed by a "typical" first offender, repeat offender and dangerous offender. Rudolph J. Gerber, *Arizona's New Criminal Code: An Overview and a Critique*, 1977 Ariz. St. L.J. 483, 505 (1977); Justice Michael D. Ryan, *Sentencing and Punishment: Introductory Remarks*, 38 Ariz. St. L.J. 367 (2006); *see also* A.R.S. §§ 13–701(C) (2001), –604 (Supp.2006). The sentencing judge is authorized to increase or decrease the presumptive sentence after considering the aggravating and mitigating circumstances.

¶ 45 In adopting presumptive sentencing for non-capital cases, the legislature essentially duplicated the system it had implemented for capital cases. Under both systems, the legislature reserved the harshest penalties for conduct that exceeded the norm for the particular offense. Because the capital and non-capital sentencing systems share the same general purpose they are in *pari materia*, and "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *Pinal Vista Prop., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (quoting *Bauza Holdings, L.L.C. v. Primeco, Inc.*, 199 Ariz. 338, 342, ¶ 14, 18 P.3d 132, 136 (App.2001)). Based on this well established principal of statutory construction, I believe the non-capital and capital aggravators should be defined, interpreted and applied in like manner.

¶ 46 The majority does not, however, do this. It distinguishes the Arizona Supreme Court cases that have provided substance and meaning to "heinous, cruel or depraved" because the court discussed what these words meant in capital cases. The majority is correct on that score, but the supreme court has never suggested that its construction of "heinous, cruel or depraved" is linked to, and only to, first-degree murder convictions. Indeed, this court has relied on the supreme court's capital cases in construing the meaning of the non-capital aggravator. *State v. Stanhope*, 139 Ariz. 88, 676 P.2d 1146 (App.1984) (armed robbery, kidnapping, aggravated assault and first-degree burglary); *State v. Inglish*, 129 Ariz. 444, 631 P.2d 1102 (App.1981) (second-degree murder). The majority discounts these cases because we were not requested to determine whether compliance with the capital case law was required in a non-capital setting. I agree the issue was not raised in either case; nevertheless, these cases are instructive.

¶ 47 To justify its conclusion that a finding of heinousness, cruelty or depravity as a non-capital aggravating circumstance may be established without compliance with the *Murdaugh* factors, the majority cites *State v. Bean*, 174 Ariz. 544, 851 P.2d 843 (App.1992), and *State v. Meador*, 132 Ariz. 343, 645 P.2d 1257 (App.1982), *superseded on other grounds by* A.R.S. § 13–702(D), *as stated in State v. Molina*, 211 Ariz. 130, 137, ¶ 24, 118 P.3d 1094, 1101 (App.2005). Respectfully, neither *Bean* nor *Meador* provide any support for this conclusion.

¶ 48 In *Bean*, this court affirmed an aggravated sentence following the defendant's conviction of custodial interference. 174 Ariz. at 545, 851 P.2d at 844. We explained the superior court had found the defendant's statements to the child's mother that she would "never see the child again were an aggravating circumstance in that the statements were made with cruelty and depravity and with an intent to cause the mother great emotional harm." *Id.* at 548, 851 P.2d at 847. We then observed that emotional harm to the victim as well as whether the offense was

committed in a cruel and depraved manner were both aggravating circumstances under the then current version of A.R.S. § 13–702. *Id.* However, we did not analyze or discuss in any way the non-capital aggravator or even suggest that the non-capital aggravator could be established without compliance with the *Murdaugh* factors.[10]

¶ 49 In *Meador*, the defendant was convicted of second-degree murder. 132 Ariz. at 344, 645 P.2d at 1258. The superior court imposed an aggravated sentence finding that the murder was committed in a cruel and depraved manner because the defendant left the victim dead or dying without "any hope of assistance to be torn apart by animals and left in a manner that would indicate that [the defendant was] completely without conscious thought or remorse." *Id.* at 347, 645 P.2d at 1261. The factual findings made by the trial court dovetail with the meaning given to the terms cruel and depraved by our supreme court. Thus, *Meador* is consistent with the point I make here, not with the majority's conclusion.

¶ 50 The majority says application of the *Murdaugh* factors in non-capital cases would "effectively eliminate" the heinous, cruel or depraved aggravator from consideration in many, if not all non-capital felonies. *Supra* ¶ 15. It also asserts the *Murdaugh* factors would have no application to those non-capital offenses that involve non-physical crimes. *Supra* ¶ 19. I disagree with both arguments. Although certain of the *Murdaugh* factors pertain to physical injury, not all of them do. Cruelty is not dependent on the victim's physical pain. Cruelty encompasses mental

distress. And, relishing is also not dependent on physical injury. Although, as the majority points out, application of the heinous, cruel or depraved aggravator may be sought for all non-capital felonies, not all non-capital felonies will support its application.

¶ 51 The *Knapp* definitions fail to provide a factual mooring for determining whether a defendant's conduct exceeded the norm for the particular offense. The *Murdaugh* factors do.[11] They do, because they tell the finder of fact how to measure what the defendant did against specific modes of conduct. For example, even though our supreme court has said on multiple occasions that senselessness and helplessness "tend to reveal less about a defendant's state of mind" than relishing, gratuitous violence and mutilation, *State v. Prince*, 206 Ariz. 24, 27, ¶ 10, 75 P.3d 114, 117 (2003); *State v. Hyde*, 186 Ariz. 252, 281, 921 P.2d 655, 684 (1996), the majority holds to the contrary. *Supra* ¶ 25. One can only wonder how these concepts reveal little about a defendant's state of mind in a capital case but reveal significant information about a defendant's state of mind in a non-capital case.

¶ 52 In summary, I join with the majority in affirming Barraza's sentence. I respectfully dissent from those portions of the majority's decision holding the *Murdaugh* factors inapplicable to the non-capital aggravator. First, this issue is not properly presented in this case and second, the majority's rejection of the *Murdaugh* factors is contrary to the intent of the legislature in revising the criminal code and

---

10. The majority suggests that the facts in *Bean* would not pass muster under the *Murdaugh* factors. *Bean's* discussion of the defendant's conduct is hardly sufficient to support this conclusion. But, even if we were in a position to assess the *Bean* defendant's conduct against the *Murdaugh* factors, the defendant's statement to the mother that she would "never see [her] child again" could support a finding of cruelty or a finding that the offense was especially heinous or depraved because the defendant appeared to have relished abducting the child.

11. The Arizona Supreme Court has noted that the factors identified in *Gretzler*, which were resummarized in *Murdaugh*, are not absolutely exclusive. *State v. Barreras*, 181 Ariz. 516, 521,

892 P.2d 852, 857 (1995). Nevertheless, it has urged trial courts to apply them because they provide a "consistent and rationally reviewable standard" for the capital aggravator. *Id.* Consistent with the supreme court's recognition that these factors are not absolutely exclusive in the capital context, I cannot say they are absolutely exclusive in the non-capital context. But, precisely because these factors supply a "consistent and rationally reviewable standard," they should be used in determining whether a non-capital offense was committed in an especially heinous, cruel or depraved manner. In my view, the *Gretzler–Murdaugh* factors provide more than optional guidance regarding the meaning of the non-capital aggravator.

adopting a system of presumptive sentenc-
ing for most non-capital offenses.